UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE DOE,

    Plaintiff,

v.

JONATHAN REES, a/k/a GREG ELLIS,
a/k/a JONNY REES,

    Defendant.

Case No.: 3:23-CV-1352 (TJM/ML)

**AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff, Jane Doe ("Plaintiff"), by and through her attorney, Kenneth Caruso Law, LLC, as and for her Amended Complaint against Jonathan Rees, a/k/a Greg Ellis, a/k/a Jonny Rees ("Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1. Defendant is an actor who has appeared in dozens of movies, television shows, and podcasts, and who has tens of thousands of followers on social media.

2. Plaintiff had an on-again, off-again, intimate relationship with Defendant from April 2016 until September 6, 2022, when Plaintiff informed Defendant that she was ending the relationship, blocked him from continuing to call or text her, and stopped responding to his attempts to contact her.

3. Immediately thereafter, Defendant began a campaign of threats, harassment, exposure and defamation.

4. Defendant's campaign began with threats that he would harm himself if Plaintiff did not respond. That tactic by Defendant had worked in the past, because Plaintiff knew that

1

Defendant had previously been institutionalized for a suicide attempt. This time, however, Plaintiff remained firm and did not respond.

5. When that tactic failed, Defendant increased the pressure, by writing, "In light of your unwillingness to talk it out, I will soon be sharing my experiences with you – MY truths – with your family, friends and business associates." Plaintiff, however, remained firm and did not respond to the threats.

6. When those tactics failed, Defendant increased the pressure still further. On October 9, 2022, Defendant sent Plaintiff an email that included a picture of Plaintiff, naked and showing her bare breasts, nipples and pubic area, and engaged in masturbation (the "Intimate Visual Depiction"). Defendant took the Intimate Visual Depiction without Plaintiff's knowledge or consent, when Plaintiff had a reasonable expectation of privacy, in her own home, during a private, intimate interaction between Plaintiff and Defendant on a Facetime call. Plaintiff specifically told Defendant not to record, save, or share any of their intimate communications. Defendant threatened to publish the Intimate Visual Depiction and other pictures and videos to a wide audience if Plaintiff did not contact him. Defendant wrote, "I will post documents, photos, audio, video, on a special website dedicated all about you, and stop at nothing to best you." He continued, "unless you communicate with me it will get way worse." This worried Plaintiff, because Defendant had more than 65,000 social media followers at the time. Nonetheless, Plaintiff remained firm and did not respond.

7. As he had threatened, Defendant continued and increased his campaign to terrorize Plaintiff. On October 9, 2022, Defendant wrote to Plaintiff's daughter, and – as he had threatened – made false and defamatory statements about Plaintiff, including, for example, the untrue statements that Plaintiff had been drugged and raped as a child by a close family friend,

that she had committed various crimes, that she was a prostitute, and that she had cheated on Defendant during their relationship. Defendant also made derogatory statements about Plaintiff's mental health and sexuality. Defendant implied he had secrets to disclose about Plaintiff's daughter, who was a new mother herself. Plaintiff's daughter blocked Defendant, and he escalated further.

8. On October 11, 2022, Defendant sent an email to a person ("JM"), who was Plaintiff's business associate and friend, as he had threatened. The email included the Intimate Visual Depiction. In that email, Defendant wrote, "I have a team planning a podcast special and a website on [Plaintiff] – about her, her narcissism, and her escapades. Her diagnosed borderline personality disorder. It'll be embarrassing and humiliating for [Plaintiff]." He continued, "All she had/has to do is have one final conversation to resolve all this and she won't do that." In Defendant's email to JM, he wrote that he would publish more sexually explicit images and videos of Plaintiff unless Plaintiff contacted him. Defendant's statement, furthermore, was false in that Plaintiff is not diagnosed with borderline personality disorder.

9. On October 14, 2022, the Superior Court of the State of California, County of Los Angeles (the "California Court") granted a temporary restraining order, in favor of Plaintiff and against Defendant. The temporary restraining order protected Plaintiff and Plaintiff's adult daughter, son-in-law, and grandson.

10. On November 14, 2022, after Defendant testified in open court, the California Court issued a Domestic Violence Restraining Order After Hearing (the "DV ROAH"), protecting Plaintiff from Defendant.

11. Nevertheless, thereafter, Defendant continued his campaign against Plaintiff, as alleged more particularly below.

12. As a result of Defendant's actions, Plaintiff fears for her safety and wellbeing and has suffered emotional, psychological, mental, and financial harm.

13. Plaintiff brings this action seeking relief against Defendant for violations of federal privacy laws, 15 U.S.C. § 6851; Defendant's disclosure of intimate images in violation of New York nonconsensual pornography statutes; intentional infliction of emotional distress; defamation; malicious prosecution; and fraudulent transfers.

## PARTIES

14. When this action was commenced, Plaintiff was a citizen of New Mexico.

15. Plaintiff is a professional photographer, who relies on her reputation in connection with her business.

16. When this action was commenced, Defendant was a citizen of New York, residing at 680 State Highway 220, McDonough, New York 13801.

17. Defendant is an actor and author, who has a large social media following, having more than 65,000 followers on Twitter, now known as X, and 17,000 followers on Instagram.

18. Defendant has a history of domestic violence restraining orders, including one, upon information and belief, that protected his ex-wife, and now, a current restraining order, as alleged more particularly below, that protects Plaintiff.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, in that this action arises under the laws of the United States; specifically, 15 U.S.C. § 6851.

20. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the claims for relief that arise under state law.

21. In the alternative, this Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1), in that the action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

22. Venue lies in this district, pursuant to 28 U.S.C. § 1391(b), in that Defendant resided in this district, and a substantial part of the events or omissions giving rise to the claim occurred in, and a substantial part of property that is the subject of this action is situated in, this district.

**ALLEGATIONS COMMON
TO ALL CLAIMS FOR RELIEF**

23. From in or about April 2016 to in or about September 6, 2022, Plaintiff and Defendant were in an intimate relationship.

24. On or about September 5, 2022, Defendant sent a desperate plea to Plaintiff to communicate with him after Plaintiff attempted to end the relationship. Defendant insinuated that he had something crucial to share with her. Plaintiff agreed to speak with Defendant.

25. On September 6, 2022, Plaintiff spoke with Defendant via a video call. During the call, Defendant berated Plaintiff and called her names such as "whore," "prostitute," and "slut."

26. Plaintiff then told Defendant that this would be the last time he would ever see her or hear from her. Plaintiff then blocked Defendant on social media and various texting platforms. Plaintiff has not spoken to Defendant since.

27. Thereafter, and on September 6, 2022, Defendant emailed Plaintiff the following threat: "I hope that you will 'unblock' me so that if anything disastrous should happen in the future that you and I will be reachable." Plaintiff did not respond.

28. On September 9, 2022, Defendant sent an email to Plaintiff in which Defendant threatened that he would kill himself unless Plaintiff contacted him. Specifically, he wrote, "In light of recent events and my being left with no ability to contact you via cellphone or text in case of an emergency, there are some series [sic] considerations I need to make in terms of my living trust, estate executors, possessions, and in particular, my end of life decisions[.]" Plaintiff knew that Defendant had previously attempted to commit suicide and had been hospitalized for mental health problems, so she understood the gravity of this threat. Despite her serious concern, and because she was afraid of Defendant, Plaintiff did not respond.

29. On September 15, 2022, Defendant sent Plaintiff an email, attaching a picture of a letter he claimed had been sent to his address in Culver City, California. He asked where Plaintiff wanted it sent. This was an apparent effort to find out where Plaintiff was living. Plaintiff, again, did not respond.

30. On September 16, 2022, Defendant wrote to Plaintiff via email, "My attempts to contact you to discuss your behavior have proved futile. I am still perplexed as to why you chose to commit federal crimes, violate my privacy, and embark on a years long campaign to salvage [sic] my reputation. In light of your unwillingness to talk it out, I will soon be sharing my experiences with you - MY truths – with your family, friends, and business associates." Plaintiff, again, did not respond. Plaintiff understood this to show that Defendant was acting upon his threat to ruin Plaintiff's reputation, relationships, and business.

31. On October 9, 2022, Defendant sent Plaintiff an email that included the Intimate Visual Depiction. In this email, Defendant also threatened to post other private, intimate content about Plaintiff (some of which Defendant invented) on the Internet unless Plaintiff communicated with him. Defendant wrote, "I will post documents, photos, audio, video, on a

6

special website dedicated all about you, and stop at nothing to best you at what you set out to do to me – to ruin my reputation … So keep going [Plaintiff First Name][Plaintiff Maiden Name] … keep avoiding and ignoring me … And you will see who has more to lose … I am just getting started … Unless you communicate with me it will get way worse …. It ends when you communicate."

32. Also on October 9, 2022, Defendant emailed Plaintiff's daughter, at her work email address. The subject line of the email was "Your Mother." The email falsely accused Plaintiff of, among other things, committing a litany of crimes and engaging in sexual infidelity. In this email, Defendant wrote, "I am determined that she [Plaintiff] will not do this to anyone else in the future." Defendant wrote that he had evidence of Plaintiff committing crimes including "2-part[sic] wire tapping Defendant (a federal offense she admitted to), illegally impersonating me to gain access to my phone records (a CDR offense), multiple privacy protection act violations (state and federal), false police reports," and that Plaintiff had "attacked [him] with a kitchen knife," and "created false legal declarations" about his violent behavior. Defendant wrote, "Your mother is a pathological liar with multiple personalities and an unstable temperament." Defendant threatened to reveal more details, writing that he was only providing Plaintiff's daughter with "the tip of the iceberg of what [he has] managed to discover about [Plaintiff's] deceptions." Plaintiff's daughter did not respond.

33. On October 10, 2022, Plaintiff was contacted by "JS," a producer for one of Plaintiff's long-term clients. JS informed Plaintiff that Defendant had sent JS a message that Defendant had a "proposition" regarding Plaintiff.

34. On October 11, 2022, Defendant sent an email to Plaintiff stating that Plaintiff is a "lying, cheating piece of absolute shit of a human being."

35. On October 11, 2022, at 5:39 p.m., Defendant sent an email to JM, threatening to expose Plaintiff. In this email, Defendant referred to Plaintiff as a "first class lying cheating bitch" and wrote, "If she doesn't communicate with me … I'm going to share everything with everyone." Plaintiff did not contact Defendant. JM did not respond to Defendant.

36. A mere 40 minutes later, at 6:19 p.m., Defendant, as he had threatened, sent the Intimate Visual Depiction to JM in an email. In the email to JM, Defendant wrote,

> I have my team planning a podcast special and an [sic] website on [Plaintiff first name] [Plaintiff maiden name] – about her, her narcissism, and her escapades. Her diagnosed borderline personality disorder. It'll be embarrassing and humiliating for Plaintiff's first name …
>
> All she had/has to do is have one final conversation to resolve all this and she won't do that – and so I will remedy her reputation savaging and lies privately and publicly.
>
> If what she told you is true, how do I have photos and videos from March through August of her performing masturbation for me? (See screenshot!) …
>
> I will not stop until she allows us closure.

37. On October 12, 2022, Defendant sent WhatsApp messages to Plaintiff's daughter reiterating the false and defamatory information he had sent to her via email on October 9, 2022. Plaintiff's daughter did not respond. Defendant then messaged Plaintiff's daughter via an Instagram direct message, with similar false and defamatory accusations against her mother. Plaintiff's daughter demanded Defendant stop contacting her.

38. Also on October 12, 2022, Defendant sent Plaintiff an email repeating his demand to get "Final Closure." Plaintiff did not respond.

8

39. Defendant's behavior was particularly frightening because Defendant is a Hollywood actor and has a large social media following with the ability to destroy Plaintiff's reputation and career.

40. Defendant also had a concerning history of profiting from his own acts of domestic violence. Indeed, in 2015, a restraining order was issued against Defendant to protect his former wife, who was the mother of his children. In 2021, Defendant published a book, "The Respondent: Exposing the Cartel of Family Law[,]" in which he criticized the family court that oversaw his ex-wife's domestic violence case against him. Defendant was featured on an episode of Dr. Drew's widely circulated podcast to discuss the book.

41. On October 14, 2022, Plaintiff petitioned the California Court for a domestic violence restraining order. The California Court then granted a temporary restraining order, in favor of Plaintiff, Plaintiff's adult daughter, son-in-law, and grandson.

42. On October 31, 2022, in retaliation against the California Court temporary restraining order, Defendant filed a petition against Plaintiff for a domestic violence order of protection (the "Retaliatory Petition") in Family Court, Chenango County, New York (the "New York Court").

43. In the Retaliatory Petition, however, Defendant made false statements and submitted fabricated evidence. For example, Defendant asserted that Plaintiff had wiretapped him. Attached to Defendant's declaration, signed under penalty of perjury in the State of New York and filed in the New York Court, was an email purportedly from Plaintiff, but which Defendant had materially altered so as to make it appear that Plaintiff had admitted to watching Defendant through his Ring camera. Defendant, however, had forged the email, as later proven through computer forensics.

44. On or about November 1, 2022, the New York Court, in reliance of Defendant's false statements, granted a temporary restraining order against Plaintiff. Defendant sent copies of the temporary restraining order to several of Plaintiff's friends and professional associates.

45. Also on or about November 1, 2022, Defendant contacted the IRS and filed a false complaint against one of Plaintiff's companies, which led to an audit of the company, for which Plaintiff incurred accountants' fees.

46. Also on or about November 1, 2022, upon information and belief, Defendant filed a report with the Transportation Security Administration ("TSA") falsely flagging Plaintiff as a potential danger who may be imminently boarding a plane and may have access to guns. The TSA, however, took no action against Plaintiff.

47. On November 4, 2022, Defendant caused Plaintiff to be served with the New York restraining order.

48. Also on November 4, 2022, Defendant sent an associate from New York to the home of Plaintiff's daughter in Texas, to demonstrate that he would not be restrained. The associate went to Plaintiff's daughter's house while she was home alone with her new baby. The associate specifically asked for Plaintiff's daughter by name, and handed her the New York restraining order, even though the daughter was not mentioned in those papers. The delivery, purporting to be service of process, was nothing more than another threat. These actions, furthermore, violated the California Court's restraining order, which specifically prohibited Defendant from taking "any action to look for any person protected by this order, including their addresses or locations."

49. Also on November 4, 2022, Defendant sent an email to "GR", who was Plaintiff's professional colleague. The email falsely stated that Plaintiff is a "very dangerous individual

with 8 aliases … [and] She is facing multiple felonies in multiple states. **Please**, you be very careful." (emphasis in original). Defendant specifically instructed GR to forward the email to another one of Plaintiff's professional associates with whom Plaintiff was then working on a project. Upon information and belief, Defendant knew that Plaintiff was engaged with this professional associate on a project at that time.

50. On or about November 5, 2022, Defendant filed a false report, alleging wrongdoing by Plaintiff, with the Norwich (New York) Police Department.

51. On or about November 6, 2022, Defendant drafted and circulated a false press release about Plaintiff, entitled, "Amber Heard's Copycat," which posted a photograph of Plaintiff's face next to a photograph of Amber Heard's face (the "Press Release"). The Press Release included lies such as, Plaintiff "Caught Wiretapping [Defendant]. Stalking And Recording [Defendant] at his LA Home For Six Months, Without His Knowledge & Attacking Him With a Knife: Ordered To Be Restrained by New York Judge." In the Press Release, Defendant fabricated a quoted response from Plaintiff, which stated, "*I logged into your RING account. I continued watching and recording it for six months. Where I really messed up was to sit and watch it and share it with others.*" Upon information and belief, Defendant sent the Press Release to his publicist, his producer, his manager, and approximately 20 news media organizations, including the Daily Mail, Fox, and NBC.

52. On or about November 7, 2022, Defendant filed a false report, alleging wrongdoing by Plaintiff, with the New York State Police.

53. On November 14, 2022, both Plaintiff and Defendant testified in the California Court at the trial on Plaintiff's petition for a domestic violence restraining order. During his testimony, Defendant admitted that he sent the Intimate Visual Depiction to Plaintiff and to JM

for the purpose of pressuring Plaintiff to speak with him. He testified, "It was for the sole purpose of us having a conversation[.]"

54. The California Court found Plaintiff credible and issued the three-year DV ROAH, which expires on November 14, 2025.

55. In addition to the no-abuse, no-contact, and stay-away language, the DV ROAH specifically stated that "Respondent may not post or share any photo of Petitioner except upon receipt of a written release by Petitioner in advance."

56. Defendant nevertheless continued his actions to intentionally harm Plaintiff, causing Plaintiff to suffer continued harm and distress. For example:

    a. On November 25, 2022, just before seeking a new trial in the California Court, Defendant, through his associate, sought to intimidate "DB"—who had testified previously, providing crucial jurisdictional evidence against Defendant in the California action—from testifying against Defendant at any new trial.

    b. On November 26, 2022, Defendant posted on his social media page that he would reveal Plaintiff's name soon because she had come after him.

57. On February 3, 2023, the California Court heard and denied Defendant's motion for a new trial.

58. On or about February 24, 2023, Defendant's counsel in the New York proceeding commenced by the Retaliatory Petition was provided with forensic proof of the forged document supporting Defendant's petition for a restraining order. Defendant did not deny the forgery, and instead, through counsel, dismissed the Retaliatory Petition.

59. Defendant's abuse, all of which was inflicted on Plaintiff for her refusal to communicate with Defendant, has caused Plaintiff to suffer financial, psychological, and

emotional harm. Among other things, she has needed to increase her security, engage counsel and forensics experts, and otherwise live in fear of Defendant and the repercussions of his actions.

**FIRST CLAIM FOR RELIEF**
(Violation of 15 U.S.C. § 6851)

60. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

61. On or about October 11, 2022, and on or about other dates, Defendant disclosed the Intimate Visual Depiction.

62. Plaintiff was the individual depicted in the Intimate Visual Depiction.

63. Defendant made the disclosure in and affecting interstate commerce, and using a means or facility of interstate commerce, by means of email, an Internet connection, and/or a cell phone, tablet, and/or computer.

64. Defendant made the disclosure without the consent of Plaintiff.

65. Defendant made the disclosure with knowledge that, and/or with reckless disregard whether, Plaintiff had not consented to such disclosure.

66. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

**SECOND CLAIM FOR RELIEF**
(Violation of N.Y. Civil Rights Law § 52-b(1))
(Dissemination and/or Publication of Image)

67. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

68. In the Intimate Visual Depiction, Plaintiff is a person depicted in a still image (the "Image").

69. Defendant disseminated and/or published the Image.

70. Defendant did so for the purpose of harassing, annoying and alarming Plaintiff.

71. The Image was taken when Plaintiff had a reasonable expectation that the image would remain private.

72. The Image depicts unclothed and exposed intimate parts of Plaintiff.

73. Defendant disseminated and published the Image without Plaintiff's consent.

74. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

## THIRD CLAIM FOR RELIEF
(N.Y. Civil Rights Law § 52-b(1))
(Threatened Dissemination and/or Publication of Image)

75. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

76. Plaintiff is a person depicted in the Image.

77. Defendant threatened to disseminate and/or publish the Image.

78. Defendant threatened to disseminate and/or publish the Image without Plaintiff's consent.

79. Defendant did so for the purpose of harassing, annoying and alarming Plaintiff.

80. The Image was taken when Plaintiff had a reasonable expectation that the Image would remain private.

81. The Image depicts unclothed and exposed intimate parts of Plaintiff.

82. Defendant threatened to disseminate and publish the Image without Plaintiff's consent.

83. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

## FOURTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)

84. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

85. Defendant engaged in extreme and outrageous conduct, so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

86. Defendant intended to cause, and/or disregarded a substantial probability of causing, severe emotional distress.

87. Defendant's conduct caused Plaintiff to suffer severe emotional distress.

88. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

**FIFTH CLAIM FOR RELIEF**
(Defamation—November 4, 2022, Email)

89. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

90. On or about November 4, 2022, Defendant drafted and sent an email to GR, Plaintiff's professional associate, which stated that Plaintiff is "very dangerous individual with 8 aliases…[and] She is facing multiple felonies in multiple states. Please, you be very careful."

91. That statement was of and concerning Plaintiff.

92. That statement was false.

93. That statement was defamatory in that it had a tendency to expose Plaintiff to hatred, contempt, ridicule, and/or disgrace.

94. That statement was defamatory *per se* in that it is defamatory on its face, and/or it tends to injure Plaintiff in her trade, business, or profession, and/or it alleges that Plaintiff committed a crime.

95. Defendant published that statement without privilege to do so.

96. Defendant published that statement with the requisite level of fault—that is, with actual malice, knowledge that the statement was false or with reckless disregard of whether it

was false or not; in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties; or negligently.

97. Defendant published that statement with common-law malice—that is, with spite, ill will, hatred and/or the like.

98. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

**SIXTH CLAIM FOR RELIEF**
(Defamation—Press Release)

99. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

100. Defendant drafted the Press Release.

101. On or about November 6, 2022, and continuing thereafter, Defendant disseminated and published the Press Release.

102. In the Press Release, Defendant wrote the title, "Amber Heard's Copycat," and he posted a photograph of Plaintiff's face next to a photograph of Amber Heard's face.

103. Defendant also made false statements in the Press Release, including, but not limited to, Plaintiff "Caught Wiretapping [Defendant]. Stalking And Recording [Defendant] at his LA Home For Six Months, Without His Knowledge & Attacking Him With a Knife: Ordered To Be Restrained by New York Judge."

104. Defendant further published a false quote attributed to Plaintiff: "I logged into your RING account. I continued watching and recording it for six months. Where I really messed up was to sit and watch it and share it with others."

105. The statements in the Press Release were of and concerning Plaintiff.

106. The statements in the Press Release were false.

16

107. The statements in the Press Release were defamatory in that they had a tendency to expose Plaintiff to hatred, contempt, ridicule, and/or disgrace.

108. The statements in the Press Release were defamatory per se in that they were defamatory on their face, and/or they tend to injure Plaintiff in her trade, business, or profession, and/or they allege that Plaintiff committed a crime.

109. Defendant published the statements in the Press Release without privilege to do so.

110. Defendant published the statements in the Press Release with the requisite level of fault—that is, with actual malice, knowledge that they were false or with reckless disregard of whether they were false or not; in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties; or negligently.

111. Defendant published the statements in the Press Release with common-law malice—that is, with spite, ill will, hatred and/or the like.

112. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

### SEVENTH CLAIM FOR RELIEF
(Malicious Prosecution)

113. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

114. On or about October 31, 2022, Defendant filed the Retaliatory Petition in the New York Court, thereby initiating a domestic violence proceeding against Plaintiff (the "Retaliatory Proceeding"). Thereafter, Defendant prosecuted the Retaliatory Proceeding.

115. Defendant commenced and prosecuted the Retaliatory Proceeding with actual malice in that he knew that the allegations in the Retaliatory Petition were false.

116. Defendant fabricated evidence against Plaintiff, he submitted such evidence to the New York Court and he otherwise made and relied upon false statements.

117. Defendant commenced and prosecuted the Retaliatory Proceeding in the absence of probable cause.

118. On or about March 3, 2023, after Defendant's fabrication of evidence came to light, Defendant withdrew the Retaliatory Proceeding, which the New York Court dismissed, thereby terminating the Retaliatory Proceeding in favor of Plaintiff.

119. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

**EIGHTH CLAIM FOR RELIEF**
(Fraudulent Transfers)
(Debtor and Creditor Law §§ 273, 276, 277)

120. Plaintiff repeats and realleges paragraphs 23-59 above as if fully set forth here.

121. Beginning on or about December 9, 2021, Defendant owned, possessed and/or controlled land and improvements, including a house, located at 680 State Highway 220, McDonough, New York 13801 (the "Property").

122. On or about October 31, 2023, Plaintiff commenced this action.

123. On or about October 31, 2023, a claim or claims arose in favor of Plaintiff against Defendant.

124. On October 31, 2023, or by no later than November 15, 2023, November 28, 2023, and/or December 13, 2023, Plaintiff knew of the pendency of this action.

125. Thereafter, on or about December 28, 2023, Defendant transferred the Property for at least $999,999 (the "Proceeds"), which Defendant then transferred out of, and removed from, the State of New York.

126. Defendant made the foregoing transfers (the "Transfers") with actual intent to hinder, delay and defraud Plaintiff. In particular:

(a) before the Transfers were made, Defendant had been sued by Plaintiff;

(b) the Transfers transferred substantially all of Defendant's assets;

(c) Defendant has concealed the Proceeds;

(d) Defendant has removed the Proceeds from the State of New York;

(e) Defendant has absconded from the State of New York;

(f) Defendant has failed and refused to provide his current address for use in this action;

(g) Upon information and belief, Defendant retained possession and control of the Proceeds after the Transfers;

(h) Defendant became insolvent shortly after the Transfers were made; and/or

(i) On or about January 23, 2024, Defendant's counsel stated to Plaintiff's counsel that Defendant is "judgment-proof."

127. The Transfers are fraudulent as against Plaintiff.

128. As a result of the foregoing, Plaintiff suffered damages in an amount to be determined at trial or at a hearing in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment, in her favor and against Defendant, and grant her relief awarding:

A. On the First Claim for Relief, the greater of Plaintiff's actual damages, or liquidated damages in the amount of $150,000, the costs of this action, including reasonable attorney's fees and other litigation costs reasonably incurred, and a permanent injunction

ordering Defendant to cease display and/or disclosure of the Intimate Visual Depiction and of any other intimate visual depictions of Plaintiff;

B.  On the Second and Third Claims for Relief, compensatory damages, punitive damages, reasonable court costs and attorney's fees, and injunctive relief including a permanent injunction ordering Defendant to cease displaying and/or disclosing the Image and any other visual depictions of Plaintiff in his possession;

C.  On the Eighth Claim for Relief, a money judgment in the amount of the Transfers and/or the Proceeds, reasonable attorney's fees, avoidance of the Transfers, and an injunction or other order prohibiting Defendant from making further transfers and directing Defendant to restore the Proceeds for recovery by Plaintiff;

D.  On all other Claims for Relief, compensatory damages, punitive damages, and the costs and disbursements of this action, including attorney's fees, as allowed by law;

E.  Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

F.  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: New York, NY
September 18, 2024

KENNETH CARUSO LAW LLC

By: /s Kenneth A. Caruso
Kenneth A. Caruso
15 W. 72nd Street
New York, NY 10022
Phone: (646) 599-4970
Email: ken.caruso@kennethcarusolaw.com

*Attorneys for Plaintiff, Jane Doe*